IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| THE TWELFTH CONGRESSIONAL DISTRICT REPUBLICAN COMMITTEE, *et al.*,<br><br>    *Plaintiffs*,<br><br>v.<br><br>BRAD RAFFENSPERGER, *et al.*,<br><br>    *Defendants*. | CIVIL ACTION<br><br>CASE NO. 1:20-cv-00180-JRH |

**BRIEF IN SUPPORT OF RICHMOND DEFENDANTS'[1] MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**

INTRODUCTION

    Plaintiffs—a party committee and several registered voters—watched the entire 2020 election cycle unfold using rules designed to assist voters during a pandemic. Only after the November general election was complete and the January 5 runoff was underway did they bring this action, seeking to change rules adopted for the pandemic that are both (1) emergency in character and (2) temporary in duration. Specifically, Plaintiffs seek to eliminate

---

[1] Richmond Defendants are Tim McFalls, Marcia Brown, Sherry T. Barnes, Terence Dicks, and Bob Finnegan, in their official capacities as members of the Richmond County Board of Elections.

1

absentee ballot drop boxes, stop early scanning of absentee ballots, and make some changes to signature matching. This Court should dismiss Plaintiffs' Complaint.

Put simply, the Plaintiffs waited well beyond the appropriate time to bring their claims against Defendants and, as a result, their claims are entirely barred by the doctrine of laches. Moreover, the Court has another, independent, basis to dismiss the Complaint under the Eleventh Amendment to the United States Constitution. Because Plaintiffs' bring the Complaint in federal court, and the requested injunction *requires* this Court to endorse their interpretation of the challenged state laws and regulations, the relief requested is barred by the Eleventh Amendment and State sovereign immunity. This Court should dismiss Plaintiffs' Complaint in its entirety and allow Georgia's runoff elections to proceed using existing processes and without making changes on an emergency basis.

## ARGUMENT AND CITATION TO AUTHORITY

Richmond Defendants move to dismiss this case under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). These two distinct vehicles for dismissal permit the Court to engage in different standards of review when determining whether to grant the motion. While a motion under Fed. R. Civ. P. 12(b)(6) is viewed deferentially to the plaintiffs' allegations, a complaint must be dismissed under

Fed. R. Civ. P. 12(b)(1) if it has not alleged a sufficient basis for subject-matter jurisdiction. *Stalley v. Orlando Reg'l Healthcare Sys.*, 524 F.3d 1229, 1232 (11th Cir. 2008). As one court has noted, in a challenge to jurisdiction in a factual 12(b)(1) motion, Plaintiffs' allegations do not enjoy the same degree of deference afforded under 12(b)(6):

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction -- its very power to hear the case -- there is substantial authority that **the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case**. In short, **no presumptive truthfulness attaches to plaintiff's allegations**, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, **the plaintiff will have the burden of proof that jurisdiction does in fact exist.**

*Eaton v. Dorchester Dev., Inc.*, 692 F.2d 727, 732 n.9 (11th Cir. 1982) (emphasis added). Moreover, "[t]here is also authority that, in a facial attack [under 12(b)(1)], a court is still free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Anderson v. Raffensperger*, No. 1:20-cv-03263, 2020 U.S. Dist. LEXIS 188677 (N.D. Ga. Oct. 13, 2020) at *14 n.4, citing *Flat Creek Transportation, LLC v. Fed. Motor Carrier Safety Admin.*, 923 F. 3d 1295, 1299 n.1 (11th Cir. 2019) (rejecting the argument that a facial attack precluded the court from weighing the evidence).

The more probing standard permitted under 12(b)(1) is particularly useful where, as here, additional context regarding the challenged processes

and procedures will aid this Court in determining whether the cause of action is appropriately before it. Most notably, this Court should take into account for purposes of its laches analysis the fact that the SEB Rules challenged by Plaintiffs are by their very terms "emergency," and are set to expire at the conclusion of the upcoming runoff election.

## I. Plaintiffs' state-law claims are barred by the Eleventh Amendment.

Plaintiffs specifically plead that their claims are to invalidate various regulations and guidance because they are violations of Georgia statutes. [Doc. 1 at ¶¶ 9, 11, 13]. In each count for relief, Plaintiffs again rely on their perceived conflict between the regulations and guidance and Georgia statutes. *Id*. at ¶ 64 (Count I); ¶ 68 (Count II); ¶ 76, 79 (Count III); ¶ 84 (Count IV); ¶¶ 85-91 (Count V). Put simply, Plaintiffs' Complaint and requested injunction *requires* this Court to endorse their interpretation of the challenged laws. This relief is barred by the Eleventh Amendment and State sovereign immunity, and even if it were not, this Court should decline the invitation to decide this issue of state law in this context.

### A. *The Eleventh Amendment precludes Plaintiffs' legal theory.*

The Eleventh Amendment generally bars claims against the State Defendants in their official capacities. *See Kentucky v. Graham*, 473 U.S. 159,

169 (1985). While *Ex Parte Young*, 209 U.S. 123 (1908), provides for an exception to Eleventh Amendment immunity, it does so only for prospective injunctive relief grounded in a violation of federal law. *See Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 105–106 (1984). Plaintiffs wave away any problems by claiming that their case is simply a First-Amendment case. [Doc. 2, p. 11]. While the Eleventh Circuit recognized that relief grounded in federal constitutional rights can be permissible, *Brown v. Georgia Department of Revenue*, 881 F.2d 1018, 1023–24 (11th Cir. 1989), that is not the case here. Plaintiffs' Complaint is a declaratory judgment action regarding compliance with state law masquerading as a constitutional argument.

Even in their emergency motion, Plaintiffs rely primarily on what they claims are "continued violations of election laws by Defendants," [Doc. 2, p. 10]. There is no doubt these are state laws, just as in their Complaint, because Plaintiffs claim Richmond Defendants have "violated *Georgia* election laws and will continue to violate *Georgia* election laws" without an injunction. *Id.* (emphasis added).

The *Brown* court acknowledged this reality in approving of relief premised upon federal constitutional rights. 881 F.2d at 1023–24. Here, unlike in *Brown*, Plaintiffs cannot succeed in suggesting their relief is based

5

in *federal* law when it requires this Court to determine an issue of *state* law—specifically, whether state regulations are consistent with existing law. "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law," and for that reason, *Ex Parte Young* is "inapplicable in a suit against state officials on the basis of state law." *Pennhurst*, 465 U.S. at 106. This Court should accordingly decline Plaintiffs' invitation to adjudicate the state-law claims.

> B. *Plaintiffs' Complaint and Motion should be heard first by a Georgia state court.*

Since Plaintiffs' Complaint and Motion are both predicated on finding that *state* regulations conflict with *state* statutes, this Court should refrain from adopting Plaintiffs' arguments on this issue of state law. But even if this Court found Plaintiffs' state-law contentions meritorious, the Court should abstain from deciding a novel issue of state law.

The Supreme Court has held that "federal courts should abstain from decision when difficult and unsettled questions of state law must be resolved before a substantial federal constitutional question can be decided." *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 236 (1984) (citing *Railroad Comm'n of Tx. v. Pullman*, 312 U.S. 496 (1941). "The *Pullman* doctrine rests on the

desirability of avoiding unnecessary decision of constitutional issues." Wright & Miller, *Federal Practice and Procedure* § 4242 Avoidance of Federal Constitutional Questions—When Abstention Required. This is precisely the predicament Plaintiffs' Motion foists upon this Court—Plaintiffs' constitutional arguments in their Motion are premised *solely* on their interpretation of relevant sections of the Georgia Code and resolving those questions would resolve Plaintiffs' apparent constitutional claims presented in their Complaint and Motion.

Plaintiffs have an adequate venue and method to proceed in Georgia's state courts—a writ of mandamus or prohibition. *See* O.C.G.A. §§ 9-6-20 and 9-6-40. Accordingly, the Court should refrain from adjudicating this novel state issue when Plaintiffs' hastened Motion is entirely unnecessary.

II. **Plaintiffs have inexcusably delayed in bringing their claims, so they are barred by laches.**

Plaintiffs also delayed bringing their case, implicating the doctrine of laches. Laches prevents a court from considering a claim when three elements are present: "(1) [A] delay in asserting a right or a claim; (2) that the delay was not excusable; and (3) that there was undue prejudice to the party against whom the claim is asserted." *Venus Lines Agency Inc. v. CVG Int'l Am., Inc.*, 234 F. 3d 1225, 1230 (11th Cir. 2000).

Laches has particular force in the context of election challenges and election administration. Indeed, laches often bars equitable relief in actions brought by tardy plaintiffs prior to the relevant election. *See Navarro v. Neal*, 904 F. Supp. 2d 812, 816-817 (N.D. Ill. 2012) (collecting cases); *see also Stein v. Boockvar*, No. 16-6287, 2020 U.S. Dist. LEXIS 75476, at *58 (E.D. Pa. Apr. 29, 2020); *Wood v. Raffensperger*, Civil Action No. 1:20-cv-04651-SDG, 2020 U.S. Dist. LEXIS 218058, at *20 (N.D. Ga. Nov. 20, 2020). Laches is not merely an academic construct. Particularly in election cases, it operates as an important bulwark against plaintiffs who would strategically use litigation to disrupt an election.

Plaintiffs who sleep on their rights only to bring last-minute challenges create "a situation in which any remedial order would throw the state's preparations for the election into turmoil." *Nader v. Keith,* 385 F.3d 729, 736 (7th Cir. 2004). By strictly applying laches in the election setting, courts properly encourage parties to litigate their claims at the earliest possible time, resulting in the least disruption to the election and, ultimately, the voters. *See*, Richard L. Hasen, *Beyond the Margin of Litigation: Reforming U.S. Election Administration to Avoid Electoral Meltdown*, 62 WASH. & LEE L. REV. 937, 998 (2005) ("Courts should see it as in the public interest in election law cases to aggressively apply laches so as to prevent litigants from securing options over

election administration problems."); *see also*, Samuel L. Bray, S*ystem of Equitable Remedies*, 63 UCLA L. REV. 530, 585 (2016) (explaining that laches "serves as a reminder to judges that an equitable remedy can have different effects at different points in time, and that this temporal variation invites opportunistic behavior by litigants").

    A.    *Plaintiffs delayed in asserting their claims.*

Plaintiffs admit they have known of the practices they challenge in this lawsuit for months, [Doc. 1 at ¶¶ 37, 58], and yet delayed filing it (and their motion for preliminary injunction) until after absentee ballots had been mailed and just days before early voting began in the election they seek to impact. They have offered no explanation for this delay. Now, on unreasonably short notice, Plaintiffs ask this Court to proceed on an emergency basis and to disrupt the critical election processes that are already underway for the January 5, 2021 runoff elections. Moreover, because the election is actually occurring in the midst of the present litigation, if Plaintiffs receive the relief they seek, such relief would run afoul of the very same Equal Protection Clause on which they base their Complaint.

Indeed, Plaintiffs would essentially have this Court bifurcate the election process, resulting in some voters having the opportunity to cast ballots at drop boxes (those who did so prior to an order of the Court) while others would be

9

forced to engage in whatever remedial election process this Court puts in its place. This would be a curious form of relief in light of Plaintiffs' equal protection claim. *See* [Doc. 1, Count IV]. If the Equal Protection Clause guards against anything, surely it guards against such a facially unequal outcome. "When a court orders a statewide remedy, there must be at least some assurance that the rudimentary requirements of equal treatment and fundamental fairness are satisfied." *Bush v. Gore,* 531 U.S. 98, 109 (2000).

While Plaintiffs ask this Court for emergency relief, the emergency is entirely one of their own making. The Court should not reward Plaintiffs' strategic dilatory tactics.

### B.   *Plaintiffs' delay was not excusable.*

Delay is measured "from the time at which the plaintiff knows or should know she has a provable claim." *Kason Indus., Inc. v. Component Hardware Grp., Inc.,* 120 F. 3d 1199, 1203 (11th Cir. 1997). As earlier noted, Plaintiffs in this case freely admit that they knew or should have known their claim was ripe for adjudication months ago at least. [Doc. 1 at ¶¶ 37, 58]. For Plaintiffs to bring this case now, knowing that Richmond Defendants are attempting to carry out an election on an already-compressed timeframe, exposes a complete lack of excuse for delay.

    C.    *Richmond Defendants and voters were prejudiced by Plaintiffs' delay.*

If Plaintiffs are successful, Richmond Defendants must remove drop boxes, reallocate staff, and inform voters of their more limited options to vote in the January 5 runoff versus every other election conducted during the 2020 election cycle. Meanwhile, Richmond Defendants must also carry out their other duties administering and supervising elections in the same timeframe. This would impose significant logistical and financial burdens on Richmond Defendants for no reason other than Plaintiffs' inexcusable delay. Indeed, such "a last-minute intervention by a federal court could 'result in voter confusion and consequent incentive to remain away from the polls.'" *Wood*, 2020 U.S. Dist. LEXIS 218058, at *22-23. To the already-significant workload of Richmond Defendants, Plaintiffs would add their requested relief. But this is exactly the kind of eleventh-hour order against which courts caution and practicality counsels.

    D.    *The challenged election practices and procedures are scheduled to expire after the January 5, 2021 election, making dismissal of the Complaint appropriate.*

Plaintiffs delay in bringing their Complaint renders any future claims unnecessary, because the challenged practices and procedures are set to expire on January 5, 2021. This extinguishes any possibility of future injury to the

11

Plaintiffs, and thus warrants an outright dismissal of Plaintiffs' Complaint in addition to its denial of the Plaintiffs' Motion for Preliminary Injunction [Doc. 2].

## CONCLUSION

Plaintiffs watched Georgia conduct election after election utilizing the emergency procedures they now challenge in this lawsuit. Only after the January 5 runoff was underway did they file this action, seeking to change those rules at the last possible minute. This Court should dismiss this case. Plaintiffs do not have standing. Their claims are barred by the Eleventh Amendment and by laches. This Court should dismiss this case and allow Georgia's election processes to move forward using Georgia's existing structure.

Respectfully submitted this 15th day of December, 2020.

**TAYLOR ENGLISH DUMA LLP**

*/s/ Diane Festin LaRoss*
Diane Festin LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com

*/s/Bryan P. Tyson*
Bryan P. Tyson (*pro hac vice forthcoming*)
Georgia Bar No. 515411
btyson@taylorenglish.com

Bryan F. Jacoutot (*pro hac vice forthcoming*)
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
770.434.6868 (telephone)

*Counsel for Richmond Defendants*

## CERTIFICATE OF SERVICE

Pursuant to L.R. 5.1, the undersigned hereby certifies that the foregoing BRIEF IN SUPPORT OF RICHMOND DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF has been filed using the Court's CM/ECF system, which will provide notice to all counsel of record in this proceeding.

*/s/ Diane Festin LaRoss*
Diane Festin LaRoss
Georgia Bar No. 430830