IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

| | |
|---|---|
| THE TWELFTH CONGRESSIONAL DISTRICT REPUBLICAN COMMITTEE, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BRAD RAFFENSPERGER, *et al.*, <br><br> *Defendants*. | CIVIL ACTION <br><br> CASE NO. 1:20-cv-00180-JRH |

**RICHMOND DEFENDANTS'[1] RESPONSE IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**INTRODUCTION**

The Supreme Court and Eleventh Circuit have repeatedly instructed courts not to alter the rules governing elections at the last minute. *See, e.g., Republican Nat'l Comm. v. Democratic Nat'l Comm.*, 140 S. Ct. 1205, 1207 (2020) ("This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election."). That admonition applies even more so where absentee ballots are "already printed

---

[1] Richmond Defendants are Tim McFalls, Marcia Brown, Sherry T. Barnes, Terence Dicks, and Bob Finnegan, in their official capacities as members of the Richmond County Board of Elections.

1

and mailed," because "[a]n injunction here would thus violate *Purcell's* well-known caution against federal courts mandating new election rules—especially at the last minute." *New Ga. Project v. Raffensperger*, 976 F.3d 1278, 1283 (11th Cir. 2020).

Despite these clear warnings, Plaintiffs now seek changes to the rules governing the January 5 runoff election. This Court should deny this last-ditch attempt to alter Georgia's election processes.

As discussed below, Plaintiffs do not have standing under the Electors and Elections Clauses to bring this case before the Court. Even if they had standing for their other claims, their claims are barred by the Eleventh Amendment because they ask this Court to interpret state law and Plaintiffs inexcusably delayed in bringing their Complaint, barring their claims under the doctrine of laches. But if this Court finds Plaintiffs clear the jurisdictional limitations imposed by the Constitution, they still have not shown any entitlement to an injunction. They are not likely to succeed as to the Richmond Defendants because elections in Richmond County are conducted according to existing law. They have not shown any irreparable harm to themselves and cannot show the equities or public interest favor limiting options for voting in the January 5 election.

This Court should deny this motion and allow the election to go forward under the same rules that have governed the June primary, the August runoff, and the November general election.

## RELEVANT FACTUAL BACKGROUND

Shortly after the onset of the COVID-19 pandemic, the State Election Board (SEB) began promulgating emergency rules to assist in the administration of elections and account for the massive and unprecedented increase in absentee-by-mail ballots during the 2020 election cycle. It first authorized absentee-ballot drop boxes for the June primary election. Declaration of L. Bailey, attached as Ex. A ("Bailey Dec.") at ¶ 4. Consistent with the SEB requirements, Richmond's drop boxes were located on government property, permanently attached to the ground, emptied regularly, and under 24-hour video surveillance. *Id*. at ¶ 5. Approximately 32% of Richmond County voters used absentee-by-mail voting during the November general election. *Id*. at ¶ 6.

For the January runoff, Richmond County has widely publicized the five drop box locations and they have been open for voters to drop off ballots since Monday, December 14. *Id*. at ¶ 8. Removing the drop boxes now would dramatically increase the burden on both voters and election officials,

because it would limit the opportunities for voters to return absentee ballots. *Id.* at ¶ 9.

Even with the massive increase in absentee ballots, Richmond Defendants ensure that signatures match from a voter's absentee-ballot application to the voter-registration records when an application is made, and then match the application, registration record, and ballot envelope when the ballot envelope arrives. *Id.* at ¶¶ 10-13.

Early scanning of absentee ballots has been critical to allow timely processing of absentee-by-mail ballots. *Id.* at ¶ 14. No tabulation of absentee ballots takes place prior to Election Day. *Id.* at ¶ 15. Richmond Defendants began separating outer envelopes (with signatures) from ballots on December 21, 2020 and will begin early scanning absentee by mail ballots on the same day. *Id.* at ¶ 16.

## ARGUMENT AND CITATION OF AUTHORITY

Because temporary restraining orders and preliminary injunctions are such extraordinary and drastic remedies, courts may not grant this type of relief "unless the movant clearly established the 'burden of persuasion' as to the four requisites." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998) quoting *All Care Nursing Serv., Inc. v. Bethesda Mem'l Hosp., Inc.*, 887 F.2d 1535, 1537 (11th Cir. 1989). Plaintiffs must show that: (1) they have

a substantial likelihood of success on the merits of their claims; (2) they will likely suffer irreparable harm in the absence of an injunction; (3) the balance of equities tips in Plaintiffs' favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 374 (2008).

Preliminary injunctions are never granted as of right, even if a plaintiff can show a likelihood of success on the merits. *Benisek v. Lamone*, 138 S. Ct. 1942, 1943–44 (2018). While a preliminary injunction is already a form of extraordinary relief, that relief is even more drastic in the context of elections, because of the public interest in orderly elections and the integrity of the election process. *Purcell v. Gonzalez*, 549 U.S. 1, 4–5, 127 S. Ct. 5 (2006).

Also noteworthy here is the U.S. Supreme Court's recognition that when "an impending election is imminent and a State's election machinery is already in progress," equitable considerations justify a court denying an attempt to gain immediate relief. *Reynolds v. Sims*, 377 U.S. 533, 585 (1964); *see also Republican Nat'l Comm.*, 140 S. Ct. at 1207 ("This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election."). This is because parties must show they exercised reasonable diligence, especially in the context of elections. *Benisek*, 138 S. Ct. at 1944. Further, where absentee ballots are "already printed and mailed," "[a]n injunction here would thus violate *Purcell's* well-known caution

against federal courts mandating new election rules—especially at the last minute." *New Ga. Project*, 976 F.3d at 1283.

## I. Plaintiffs do not show a likelihood of success on the merits.

### A. *Plaintiffs lack standing under the Elections and Electors Clauses.*

Plaintiffs allege that Richmond Defendants violated the Elections Clause (Count I) and Electors Clause (Count II),[2] which are "precisely the kind of undifferentiated, generalized grievance[s] about the conduct of government" the Supreme Court has "refused to countenance." *Lance v. Coffman,* 549 U.S. 437, 442 (2007). As Judge Grimberg explained recently:

> The law is clear: A generalized grievance regarding a state government's failure to properly follow the Elections Clause of the Constitution does not confer standing on a private citizen. *Lance*, 549 U.S. at 442; *Bognet*, 2020 WL 6686120, at *[18] ("[P]rivate plaintiffs lack standing to sue for alleged injuries attributable to a state government's violations of the Elections Clause. . . . Their relief would have no more directly benefitted them than the public at large."); *Dillard*, 495 F.3d at 1332–33.

*Wood v. Raffensperger,* Civil Action No. 1:20-cv-04651-SDG, 2020 U.S. Dist. LEXIS 218058, at *15-16 (N.D. Ga. Nov. 20, 2020). As Judge Grimberg also

---

[2] To the extent Plaintiffs Latham and Metz are attempting to assert claims under the Electors Clause in their capacity as presidential electors [Doc. 1 at ¶¶ 16, 17], and not just as registered voters, Plaintiffs have not articulated any cognizable claim under the Electors Clause upon which relief can be granted and have not overcome the hurdles to standing. *Bowyer v. Ducey*, No. CV-20-02321-PHX-DJH, 2020 U.S. Dist. LEXIS 231093, at *11 (D. Ariz. Dec. 9, 2020); *Bognet v. Sec'y Pa.*, 980 F.3d 336 (3d Cir. 2020).

6

explained, "the Electors Clause and Elections Clause share 'considerabl[e] similarity' and may be interpreted in the same manner." *Id.* at *16 n.24. Plaintiffs cannot invoke the jurisdiction of this Court for such generalized grievances because they lack "a particularized Article III injury." *Gardner v. Mutz*, 962 F.3d 1329, 1343 (11th Cir. 2020). Accordingly, Counts I and II of Plaintiffs' Complaint should be dismissed for lack of standing and this Court should deny any relief on their Motion on those points.

> **B.** *Plaintiffs' Motion would require a finding that local officials are violating state law, in violation of the Eleventh Amendment.*

Even if this Court were to accept Plaintiffs' theory, their claims are barred by the Eleventh Amendment. While Plaintiffs attempt to describe their claims as being based in federal constitutional law [Doc. 2, p. 10], the Plaintiffs seek declaratory and injunctive relief by asking this Court to adjudicate whether *state* regulations violate *state* law. Put simply, Plaintiffs' requested injunction *requires* this Court to endorse their interpretation of the challenged laws. For all the reasons explained in the accompanying Motion to Dismiss, which is incorporated by reference, any relief for Plaintiffs under their Motion is barred by the Eleventh Amendment and this Court should deny it for that reason as well.

7

      C.    *Plaintiffs are not likely to succeed in their claims that Richmond Defendants are violating the law.*

"States have the power to impose voter qualifications, and to regulate access to the franchise in other ways." *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972). While the Equal Protection Clause prohibits jurisdictions from treating similarly-situated voters differently, *Bush v. Gore*, 531 U.S. 98, 104, 121 S. Ct. 525, 530 (2000), Plaintiffs' challenge is to specific election-administration processes that they claim will affect their right to vote. [Doc. 2, p. 3]. As a result, the proper standard to review the constitutionality of these procedures is the *Anderson-Burdick* sliding scale. *Burdick v. Takushi*, 504 U.S. 428, 433, 112 S. Ct. 2059, 2063 (1992) (cannot use strict scrutiny to "tie the hands of States seeking to assure that elections are operated equitably and efficiently"). This is also the proper standard to the extent that Plaintiffs are also challenging other practices under the First Amendment. *Id.* at 434.

Under *Anderson-Burdick*, the Court weighs the alleged burden on the right to vote against the State's interests. *Burdick*, 504 U.S. at 433. When a court reviews "reasonable, nondiscriminatory restrictions" on the rights of voters, "the State's important regulatory interests are generally sufficient to justify" the restrictions. *Id.* at 434. Only if the challenged law or practice

8

imposes a "severe" burden must it be evaluated to determine if it is narrowly tailored and advances a compelling state interest. *Id.*

Plaintiffs only generally allege that the "challenged actions of Defendants are clearly illegal." [Doc. 2, p. 12]. The identified burden on the right to vote is that Defendants' alleged failure to enforce existing statutes will apparently cause fraud to be more likely. [Doc. 2, p. 13]. Again, this is the type of "undifferentiated" injury that is not sufficient particularized for purposes of Article III. *Gardner*, 962 F.3d at 1342.

Plaintiffs also cannot demonstrate that Richmond Defendants are doing anything that violates Georgia law. As Director Bailey explained, they complied with all regulations regarding the drop boxes (which the regulatory structure construed as delivery to the Board), continued to follow existing law on signature verification by matching each envelope to all records, and did not tabulate votes before Election Day. Bailey Dec. at ¶¶ 4-6, 10-15. There can, at best, be only a slight burden from following existing law.

But even if there was a burden, the impact on Richmond County voters is huge. The drop box locations have been widely publicized and their elimination would place a burden on Richmond County voters and election officials. Bailey Dec. at ¶¶ 8-9. Moreover, Plaintiffs requested relief would essentially have this Court bifurcate the election process, resulting in some

9

voters having the opportunity to cast ballots at drop boxes (those who did so prior to an order of the Court) while others would be forced to engage in whatever remedial election process this Court puts in its place. This would be a curious form of relief in light of Plaintiffs' equal protection claim. *See* [Doc. 1, Count IV]. If the Equal Protection Clause guards against anything, surely it guards against such a facially unequal outcome. "When a court orders a statewide remedy, there must be at least some assurance that the rudimentary requirements of equal treatment and fundamental fairness are satisfied." *Bush,* 531 U.S. at 109.

Finally, eliminating early scanning would make it difficult for election officials to timely process paper ballots. *Id.* at ¶ 14. Any perceived burden on Plaintiffs is more than outweighed by the important regulatory interests of Richmond Defendants in conducting the election in a way that ensures every voter is able to vote.

## II.   Plaintiffs do not establish irreparable harm.

Plaintiffs rely on the alleged injury to their constitutional rights "that cannot be remedied." [Doc. 2, p. 15]. But Plaintiffs fail to establish such a violation, and they do not acknowledge the reality that not every perceived injury related to voting threatens the right to vote. *See, e.g.*, *McDonald v. Bd. of Election Comm'rs*, 394 U.S. 802, 807, 89 S. Ct. 1404, 1408 (1969) (threat to

right to absentee ballot, not right to vote). Further, "[a]lthough the right to vote is fundamental, '[i]t does not follow, however, that the right to vote in any manner . . . [is] absolute." *Gwinnett Cty. NAACP v. Gwinnett Cty. Bd. of Registrations & Elections*, 2020 U.S. Dist. LEXIS 36702 *14–15 (March 3, 2020) quoting *Burdick*, 504 U.S. at 433.

In the context of a preliminary injunction, "the asserted irreparable injury 'must be neither remote nor speculative, but actual and imminent.'" *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) quoting *NE Fla. Chapter of Ass'n of Gen. Contractors v. Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990). But here, Plaintiffs' purported injuries are entirely speculative and remote—while they fear the possibility of illegal ballots, they have not shown that is likely to occur. [Doc. 2, p. 15].

Moreover, even assuming this case implicates irreparable harm to a person's right to vote, the one organizational Plaintiff is proceeding under a diversion-of-resources theory of standing. As an organization, they obviously cannot vote. And to the extent they would like to assert some claim on behalf of their members, the organization has failed to rely on associational standing. [Doc. 2, p. 14]. So the alleged irreparable harm to unrelated persons, to which the organization pleaded no actual connection of any kind, offers a poor vehicle

11

for injunctive relief from this Court. Plaintiffs cannot show any irreparable harm if the Court declines to enter injunctive relief at this stage.

### III. The balance of equities does not favor Plaintiffs.

Plaintiffs wave away the equities by simply claiming they cannot imagine any substantial harm to the Richmond Defendants. [Doc. 2, p. 16]. But Plaintiffs also readily acknowledge that they anticipate "disruption" in the administration of the election, including to voters by the elimination of drop boxes. *Id*. Ultimately, this tension reveals the equities do not favor Plaintiffs who waited too long to bring this challenge.

As the Court is aware, the State of Georgia just concluded an incredibly challenging election, with three separate counts of ballots and a runoff election looming. Absentee ballots for the runoff election were sent out by November 21, 2020. O.C.G.A. § 21-2-384(a)(2). The voter-registration deadline was last week, on December 7, 2020. Early voting began on December 14, 2020. O.C.G.A. § 21-2-385(d)(1).

Plaintiffs have watched multiple elections in Georgia conducted using the rules they now challenge—and readily admit that their proposed injunction will disrupt that process. [Doc. 2, p. 16]. Plaintiffs should have brought these challenges long before now, especially given the significant burden on the voters of Richmond County and the administration of the election due to their

delay. *See generally*, Bailey Dec. As a result, Plaintiffs have not shown that the equities clearly favor the granting of an injunction.

## IV. The public interest does not favor Plaintiffs.

Plaintiffs' proposed injunction is not in the public interest because of their lack of diligence. As an initial matter, the Richmond Defendants incorporate the laches arguments from their brief in support of their Motion to Dismiss, filed contemporaneously with this brief. Further, the Richmond Defendants note that litigation involving elections is unique because of the interest in the orderly administration and integrity of the election process. *Purcell*, 549 U.S. at 4. As the Eleventh Circuit noted several weeks ago, "[t]he Supreme Court has 'repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election.'" *New Ga. Project*, 976 F.3d at 1284 (quoting *Repub. Nat'l Comm.*, 140 S. Ct. as 1207). The risks of voter confusion and conflicting orders counsel against changing election rules, especially when there is little time to resolve factual disputes. *Id.*; *see also Purcell*, 549 U.S. at 5-6. To show they are entitled to a preliminary injunction, Plaintiffs must show they exercised reasonable diligence— something they cannot do. *Benisek*, 138 S. Ct. at 1944.

Even assuming everything Plaintiffs claim in their Motion is true, Plaintiffs admit they have known of the entirety of their analysis for months.

13

While they cite to rules adopted on November 23 [Doc. 2, p. 9]—still more than three weeks ago—those same rules were simply re-upping emergency rules that had been in use for the entirety of elections in 2020 stretching back for months. *See* SEB Rule 183-1-14-0.8-.14, 183-1-14-0.9-.15 posted at https://sos.ga.gov/index.php/elections/state_election_board (noting adoption several times earlier in 2020).

Yet Plaintiffs inexplicably delayed in bringing this Complaint that now proceeds on an emergency basis—without the benefit of the full adversarial process designed by the Federal Rules of Civil Procedure—far too close to the election they seek to affect. Plaintiffs should not be rewarded for their lack of reasonable diligence in this case. *Reynolds*, 377 U.S. at 585; *Benisek*, 138 S. Ct. at 1944.

## CONCLUSION

This Court should deny the emergency relief sought by Plaintiffs. They have not properly brought their claims before this Court and have not exercised the reasonable diligence required to bring claims on an emergency basis. This Court should heed the direction of the Supreme Court and Eleventh Circuit and deny Plaintiffs' Motion.

Respectfully submitted this 15th day of December, 2020.

**TAYLOR ENGLISH DUMA LLP**

*/s/ Diane Festin LaRoss*
Diane Festin LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com

*/s/Bryan P. Tyson*
Bryan P. Tyson (*pro hac vice forthcoming*)
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot (*pro hac vice forthcoming*)
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
770.434.6868 (telephone)

*Counsel for Richmond Defendants*

## CERTIFICATE OF SERVICE

Pursuant to L.R. 5.1, the undersigned hereby certifies that the foregoing RICHMOND DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION has been filed using the Court's CM/ECF system, which will provide notice to all counsel of record in this proceeding.

*/s/ Diane Festin LaRoss*
Diane Festin LaRoss
Georgia Bar No. 430830