# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# AUGUSTA DIVISION

| | |
|---|---|
| THE TWELFTH CONGRESSIONAL DISTRICT REPUBLICAN COMMITTEE, et al.<br><br>       Plaintiffs,<br><br>       v.<br><br>BRADFORD J. RAFFENSPERGER, in his official capacity as SECRETARY OF STATE, et al.<br><br>       Defendants,<br><br>GEORGIA STATE CONFERENCE OF THE NAACP; GEORGIA COALITION FOR THE PEOPLE'S AGENDA, INC.; and HELEN BUTLER,<br><br>       Proposed Intervenor-Defendants. | Civil Case No. 1:20-cv-00180-JRH-BKE<br><br>The Honorable J. Randall Hall |

**MOTION TO INTERVENE AND INCORPORATED MEMORANDUM IN SUPPORT THEREOF BY PROPOSED INTERVENOR-DEFENDANTS GEORGIA STATE CONFERENCE OF THE NAACP, GEORGIA COALITION FOR THE PEOPLE'S AGENDA, INC., AND HELEN BUTLER**

1

The Georgia State Conference of the NAACP ("Georgia NAACP"), Georgia Coalition for the People's Agenda, Inc. ("GCPA") (together, the "Organizational Proposed Intervenors"), and Helen Butler (the "Individual Proposed Intervenor," and collectively with the Organizational Proposed Intervenors, "Proposed Intervenors") hereby move to intervene in this case as Defendants as a matter of right pursuant to Rule 24(a) of the Federal Rules of Civil Procedure or, in the alternative, by permissive intervention pursuant to Rule 24(b).

## I.  INTRODUCTION

The Complaint in this case, which seeks to cut back means of facilitating the safety of voting in the January 5 run-off, was filed at a time when the deadly COVID-19 pandemic is reaching new heights of dangers for Georgia's voters – and disproportionately for Black voters and persons of color. As of December 13, 2020,[1] over 10,000 Georgians had died from the coronavirus, and Black Americans and other Americans of color have a higher rate of hospitalizations and deaths from COVID-19 than do white Americans.[2] Nevertheless, Plaintiffs seek to disrupt the absentee voting process by challenging lawful, reasonable, and commonsense measures implemented by Georgia's Secretary of State, the State Election Board and its members to ensure reasonable, safe, and secure access to voting by absentee ballot in the midst of this scourge.

Compounding the situation, Plaintiffs waited to file their Complaint until December 9, 2020 - after voters had already begun requesting absentee ballots for the January 5, 2021 runoff

---

[1] U.S. Centers for Disease Control COVID Data Tracker, *Trends in Number of COVID-19 Cases and Deaths in the US Reported to CDC, by State/Territory* for Georgia, December 13, 2020, available at: https://covid.cdc.gov/covid-data-tracker/#trends_totalandratedeaths.
[2] U.S. Centers for Disease Control, *COVID-19 Hospitalization and Death by Race/Ethnicity*, updated November 30, 3030, available at: https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-death-by-race-ethnicity.html.

elections and election officials had already begun issuing ballots to Georgia's voters. As of December 14, 2020 over 1,229,917 million absentee ballots were already requested by Georgia's voters for the January 5, 2021 runoff elections and more than 260,000 of those absentee ballots have already been returned by voters to their County registrars' offices for the January 5, 2021 runoff.[3] More than 477,000 of those absentee ballots were requested by Georgia Black voters and other voters of color.[4] At least 604,221 of these absentee ballots were requested by voters 66 years of age and older.[5]

Given the disproportionate impact on communities of color and the racial disparities in the COVID-19 data, communities of color in Georgia are uniquely affected by this suit, and their interests should be adequately represented in the litigation. Proposed Intervenors represent those interests. Indeed, Proposed Intervenors are critical participants in these actions – as of now, they would be the only party in the case representing the interests of individual voters – and are well-situated to defend the right of all Georgia voters to cast their ballots safely during this global pandemic.  The Individual Proposed Intervenor, Helen Butler, is a Black Georgia voter whose effort to cast their votes in the upcoming January 5, 2021 Senate runoff election will be made significantly and improperly more burdensome if Plaintiffs obtain the relief they seek.  The Organizational Proposed Intervenors, the GA NAACP and Georgia Coalition for the People's Agenda, Inc, are nonpartisan organizations representing the interests of thousands of Georgia members – many of whose attempts to cast their votes in the upcoming Senate runoff election and future elections would also become unduly burdensome – and dedicated to eliminating

---

[3] U.S. Elections Project, *Georgia Early Voting Statistics - 2021 Senate Run-Off Election* , December 14, 2020, available at: https://electproject.github.io/Early-Vote-2020G/GA_RO.html.
[4] *Id.*
[5] *Id.*

barriers to voting and increasing civic engagement among their members and in traditionally disenfranchised communities.

Proposed Intervenors are entitled to intervene as a matter of right under Federal Rule of Civil Procedure 24(a)(2) because: (1) Proposed Intervenors filed this motion without delay; (2) Proposed Intervenors have legally protectable interests in ensuring their lawfully-cast ballots are counted; (3) the relief Plaintiffs seek would harm Proposed Intervenors' interests; and (4) Proposed Intervenors' interests go beyond those of the named Defendants, who have only a generalized public interest in applying Georgia's election code.

Alternatively, Proposed Intervenors should be permitted to intervene under Rule 24(b). Because Proposed Intervenors seek leave to directly respond to Plaintiffs' lawsuit and motion for injunctive relief seeking to change the absentee voting rules and access to absentee ballot drop boxes after absentee voting was already underway for the January 5, 2021 election. As such, their claims and defenses necessarily share common questions of law and fact with the main action. Furthermore, this action was commenced just six days ago, including the intervening weekend. Proposed Intervenors' motion would neither delay nor prejudice the orderly adjudication of Plaintiffs' claims.[6]

---

[6] In the alternative to granting intervention under Rules 24(a)(2) or 24(b), Proposed Intervenors request that the Court give leave to file a brief as *amicus curiae.* See *United States v. Gotti*, 755 F.Supp. 1157, 1158 (E.D.N.Y. 1991) (holding that a federal district court has the inherent authority to invite participation by amicus curiae to assist the court in its proceedings). The classic role of the amicus curiae is to assist in a case of general public interest, supplement the efforts of counsel, and draw the court's attention to law or facts that may otherwise escape consideration. *Miller-Wohl Co., Inc. v. Commissioner of Labor and Indus.*, 694 F.2d 203, 204 (9 Cir. 1982); *see also New England Patriots Football Club, Inc., v. University of Colorado*, 592 F.2d 1196, 1198 n. 3 (1st Cir. 1979). There is no requirement that an amicus be disinterested. *Funbus Systems, Inc. v California Public Utilities Commission*, 801 F.2d 1120, 1125 (9 Cir. 1986); *Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir. 1982). This Motion demonstrates the important perspective and interests that Proposed Intervenors would represent as *amici*.

This motion should be granted to allow Proposed Intervenors to participate so that they may protect their and their members' right to cast their votes, as well as their own interests in promoting civic participation through voting. Indeed, as discussed below, United States District Courts have granted intervention to NAACP State Conferences in similar post-2020 election litigation in Wisconsin, Pennsylvania, and Michigan.[7]

## II.     BACKGROUND

### A.     Plaintiffs Seek to End Legally Promulgated Emergency Rules that Protected Voters and Public Health

Plaintiffs filed their complaint on December 9, 2020, targeting two emergency rules adopted by the State Election Board: Rule 183-1-14-0.8-.14, which authorizes county registrars "to establish one or more drop box locations as a means for absentee by mail electors to deliver their ballots," Compl. for Injunctive & Declaratory Relief ("Compl."), ECF No. 1, Ex. A, and Rule 183-1-14-0.9-.15, which permits county officials to open and process absentee ballots prior to Election Day. Compl., Ex. B. Plaintiffs also challenge the Secretary's May 1, 2020 absentee ballot signature review guidance. Compl., Ex. C. Plaintiffs contend that these rules and regulations violate Georgia's election laws and the Georgia and U.S. Constitutions.

Plaintiffs' litany of unsupported arguments fails to support their claims. Plaintiffs' papers misapprehend and misapply the law, and Proposed Intervenors seek to intervene in this action to protect the interests of voters whose legitimate ballots are under attack and to provide the perspective of Georgia organizations whose missions are to facilitate full and fair

---

[7] *See Donald J. Trump For President, Inc. v. Boockvar*, No. 4:20-cv-2078, Doc. 72 at 2 (M.D. Pa. Nov. 12, 2020) (holding that the NAACP and other organizations and voters "satisfy the requirements for permissive intervention under Fed. R. Civ. P. 24(b)"); *Donald J. Trump For President, Inc. v. Benson*, No. 1:20cv-1083, Doc. 20 (W.D. Mich. Nov. 17, 2020) (same), *Donald J. Trump v. The Wisconsin Elections Commission, et al.*, No. 20-cv-1785-bhl, Doc. 61 (E.D. Wisc. December 8, 2020) (same).

participation in the electoral process. Proposed Intervenors have at least as much of an interest in the outcome of this ligation as Defendants.

### B.  Plaintiffs' Proposed Relief Disproportionately Affects Black Voters and Voters of Color

Plaintiffs are attempting to limit access to drop boxes and erect new restrictions on absentee voting at the worst possible time in the COVID-19 pandemic, and also trying to do so *after* early voting has already begun. Data from the Centers for Disease Control and Prevention show that deaths and cases of COVID-19 are at an all-time high in Georgia and across the country.[8] Now, more than ever, it is critical that these emergency measures taken by the Secretary and State Elections Board remain in place in order to protect voters from vulnerable populations. Further, the data has consistently shown that pandemic deaths have disproportionately impacted Black communities and communities of color.[9] "African Americans continue to get infected and die from COVID-19 at rates more than 1.5 times their share of the population." *Id.* These racial disparities are also visible in Georgia specifically. An analysis of statewide data indicates that Black Americans represented 31.5% of all Georgia residents but 46% of COVID-19 deaths.[10]

Given the disproportionate impact that the pandemic has had on Black and Brown communities in Georgia, Plaintiffs' blatant attempts to undo public health protections by

---

[8] U.S. Centers for Disease Control COVID Data Tracker, *Trends in Number of COVID-19 Cases and Deaths in the US Reported to CDC, by State/Territory* for Georgia, December 13, 2020, available at: https://covid.cdc.gov/covid-data-tracker/#trends_totalandratedeaths.

[9] U.S. Centers for Disease Control, *COVID-19 Hospitalization and Death by Race/Ethnicity*, *supra.*; Daniel Wood, *As Pandemic Deaths Add Up, Racial Disparities Persist — And In Some Cases Worsen*, NPR, https://www.npr.org/sections/health-shots/2020/09/23/914427907/as-pandemic-deaths-add-up-racial-disparities-persist-and-in-some-cases-worsen (September 23, 2020).

[10] Hu, William and Hu, Aimee, *Preliminary Analysis of Racial Disparities in Georgia (US) COVID-19 Deaths*, SSRN, https://ssrn.com/abstract=3649557 (July 7, 2020) ("We conclude that factors associated with the virus responsible for COVID-19 and healthcare disproportionately impact Black Americans.")

restricting access to drop boxes for the upcoming January Senate runoff election also disproportionately impact Black voters and voters of color, and the Court should take extra care to ensure that these interests are represented and heard in this litigation.

      **C.**     **The Georgia NAACP and GCPA are Organizations That Promote the Interests of Voters, Particularly Black Voters and Voters of Color**

The Organizational Defendant Intervenors are nonpartisan organizations that represent thousands of Georgians, many of whom are now at risk of being unlawfully deprived of their right to vote. Both organizations are dedicated to eliminating barriers to voting and increasing civic engagement among their members and in traditionally disenfranchised communities. They expend substantial resources on voter education and turnout efforts; for this election, those efforts have included providing accurate information to voters on how to cast mail-in and absentee ballots to ensure that voters have a full and fair opportunity to participate in spite of the unprecedented circumstance of the election taking place during a global pandemic.

The Georgia State Conference of the NAACP is a non-profit advocacy group for civil rights for Black Americans that has approximately 10,000 members. **Exhibit 1**, Declaration of James Woodall ¶¶ 5-8. The Georgia NAACP has active branches throughout the state and engages in voter registration, education, turnout, and voter assistance efforts in those counties. *Id*. ¶¶ 7-9. The Georgia NAACP has been working to ensure that Black voters in Georgia are educated on different voting methods, including mail-in and absentee voting, during the COVID-19 pandemic, and has conducted phone-banking to assist Georgia voters. *Id*. ¶¶ 10-15. The Georgia NAACP also has members, including President James Woodall, who plan to cast votes in the January 2021 Senate runoff election. *Id*. ¶ 15. These members are at risk of facing

unconstitutional burdens to their access to the ballot box in the January senate runoff election if Plaintiffs' relief is granted. *Id*. ¶¶ 18-20.

The Georgia Coalition for the People's Agenda ("GCPA"), a coalition of more than 30 organizations, which collectively have more than 5,000 individual members, similarly encourages voter registration and participation, particularly among African-American and other underrepresented communities. *See* **Exhibit 2**, Declaration of Helen Butler ¶¶ 4-5. The GCPA's support of voting rights is central to its mission. *Id*. ¶ 5. The organization regularly commits its time and resources to conducting voter registration drives, voter education, voter ID assistance, "Souls to the Polls" operations, and other get-out-the-vote operations throughout Georgia. *Id*. ¶¶ 7-10. For the November 2020 election, the GCPA participated in media interviews, sponsored Public Service Announcements (PSAs), placed billboard ads, conducted phone banking, and engaged in text message campaigns to educate voters and to encourage participation in the 2020 election cycle. *Id*. ¶ 10. These efforts would all become substantially more difficult if, just weeks before the January Senate runoff election, the rules were suddenly and dramatically changed by the Court.

    **D.    The Individual Proposed Defendant Intervenor Would Have To Overcome Unconstitutional Burdens in Order to Cast Their Ballots**

Individual Proposed Defendant Intervenor Helen Butler is a Black Georgia voter who is registered to vote in Morgan County, respectively. Butler Decl. ¶¶ 2, 11. Ms. Butler voted in the November 2020 presidential election contest and intends to vote in the January Senate runoff election. Butler Decl. ¶ 11. Ms. Butler voted by absentee ballot in Morgan County in November, and intends to do so again in the January Senate runoff. *Id.* Given the continuing and

8

indeed worsening threat of the COVID-19 pandemic in Georgia,[11] Ms. Butler would face impermissible and unconstitutionally burdensome restrictions on her right to vote if the legal measures taken by Defendants are invalidated, with the election underway, early voting in progress, and a dire public health situation.

### III. ARGUMENT

#### A. Proposed Defendant Intervenors Are Entitled to Intervene as a Matter of Right

Proposed Intervenors satisfy the criteria to intervene as of right under Federal Rule of Civil Procedure 24(a). "Parties seeking to intervene under Rule 24(a)(2) must show that: (1) [their] application to intervene is timely; (2) [they have] an interest relating to the property or transaction which is the subject of the action; (3) [they are] so situated that disposition of the action, as a practical matter, may impede or impair [their] ability to protect that interest; and (4) [their] interest is represented inadequately by the existing parties to the suit." *Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692, 695-96 (11th Cir. 2017) (alterations in original) (quoting *Stone v. First Union Corp.*, 371 F.3d 1305, 1308-09 (11th Cir. 2004)). Proposed Intervenors meet each of these requirements.

##### 1. The Motion to Intervene Is Timely

This motion, which is being filed five days after Plaintiff initiated this action, is undoubtedly timely. "Courts consider four factors in assessing timeliness: (1) the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before petitioning for leave to intervene; (2) the extent of the prejudice that existing

---

[11] J. Scott Trubey and Carrie Teegardin, *Georgia surpasses 10,000 coronavirus deaths*, Atlanta Journal-Constitution, December 11, 2020, https://www.ajc.com/news/georgia-surpasses-10000-coronavirus-deaths/P67IQGXLBVH3PALODRFOAZEV2M/

parties may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest; (3) the extent of the prejudice that the would-be intervenor may suffer if denied the opportunity to intervene; and (4) the existence of unusual circumstances weighing for or against a determination of timeliness." *Comm'r, Ala. Dep't of Corr. v. Advance Local Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019) (citing *Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel*, 861 F.3d 1278, 1294 (11th Cir. 2017)).

These factors militate in Proposed Intervenors' favor here. Proposed Intervenors learned of this litigation shortly after its filing and are submitting this motion five days later. Existing parties therefore cannot plausibly claim any prejudice due to delay. Further, Proposed Intervenors would suffer prejudice if denied the opportunity to intervene, as described *infra*. Importantly, however, "when the proposed intervenor seeks intervention of right," the question "whether any existing party to the litigation will be harmed or prejudiced by the proposed intervenor's delay in moving to intervene . . . may well be the only significant consideration." *Id.* (quoting *McDonald v. E. J. Lavino Co.*, 430 F.2d 1065, 1073 (5th Cir. 1970)). No existing party to the litigation is so harmed or prejudiced here because Proposed Intervenors have not delayed in moving to intervene. Finally, there are no unusual circumstances in this matter that bear on timeliness of intervention. Accordingly, Proposed Intervenors' motion is timely.

2. Proposed Intervenors Have Sufficient Interest in This Litigation

Proposed Intervenors have a sufficient interest in the subject of this litigation. "Under Rule 24(a)(2), a party is entitled to intervention as a matter of right if the party's interest in the subject matter of the litigation is direct, substantial and legally protectable." *Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc.*, 425 F.3d 1308, 1311 (11th Cir. 2005) (quoting *Georgia v. U.S. Army*

10

*Corps of Eng'rs*, 302 F.3d 1242, 1249 (11th Cir. 2002)). "In deciding whether a party has a protectable interest . . . courts must be 'flexible' and must "focus[ ] on the particular facts and circumstances' of the case." *Huff v. Comm'r of IRS*, 743 F.3d 790, 796 (11th Cir. 2014) (second alteration in original) (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989)).

The interests of the individual Proposed Intervenor is plain: voters who intend to vote in the January Senate runoff election have a significantly protectable interest in ensuring their access to the ballot box is not unconstitutionally restricted. *See League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 43435 (5th Cir. 2011) (finding a legally protectable interest where the intervenor sought to protect his right to vote); *see also Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1176 (11th Cir. 2008) (declaring that the right to vote is a fundamental matter in a free and democratic society); *Pierce v. Allegheny Cty. Bd. of Elections*, 324 F. Supp. 2d 684, 694-95 (W.D. Pa. 2003) ("The right of qualified electors to vote . . . is recognized as a fundamental right, . . . extend[ing] to all phases of the voting process, [and applying] equally to the initial allocation of the franchise as well as the manner of its exercise."); *cf. Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1307 (N.D. Ga. 2018) (finding intervention as of right appropriate where individual voter intervenors would be potentially disenfranchised by the requested relief).

Likewise, the Organizational Proposed Intervenors have an interest in protecting one of their core missions – ensuring that their members, and all Georgians, are given a full and equal opportunity to exercise their fundamental right to vote – which they have dedicated considerable effort to advancing.  The Organizational Proposed Intervenors are committed to eliminating barriers to voting and increasing civic engagement.  In pursuit of that mission, the organizations engage in robust voter registration, voter education, and get-out-the-vote activities, expending

considerable resources towards ensuring that eligible voters in Georgia, particularly voters in traditionally disenfranchised communities, can exercise their right to vote. Discarding these critical emergency measures to expand the access to the ballot would undermine their voter-advocacy efforts, making voter education harder, making voting harder, thwarting the organizations' efforts. *See, e.g.*, Woodall Decl. ¶ 23. The frustration of these core voter enfranchisement missions gives the Organizational Proposed Intervenors a significantly protectable interest in this litigation. *See, e.g.*, *Common Cause Ind. v. Lawson*, 937 F.3d 944, 950 (7th Cir. 2019) ("[A] voting law can injure an organization enough to give it standing by compelling [it] to devote resources to combatting the effects of that law that are harmful to the organization's mission."); *Bellitto v. Snipes*, No. 16-cv-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sept. 20, 2016) (finding a labor union had a sufficient interest in ensuring that a county's voter roll maintenance activities complied with federal law).

Additionally, the Organizational Proposed Intervenors have an interest in ensuring that the absentee and drop box access rules are not changed with just weeks to go before an election, such a drastic last-minute change would force the Organizational Proposed Intervenors to divert resources from other priorities to educate members and other voters of their rights and the severe restrictions on voting that Plaintiffs seek to impose. *See, e.g.*, *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610-12 (5th Cir. 2017) (finding standing where an organization was required to dedicate additional resources to assisting voters navigate the polls); *Browning,* 522 F.3d at 1164-65; *Crawford v. Marion Cty. Election Bd.*, 472 F.3d 949, 951 (7th Cir. 2007), *aff'd*, 553 U.S. 181 (2008); *Issa v. Newsom, No. 2:20-cv-01044*, 2020 WL 3074351, at *3 (E.D. Cal. June 10, 2020). If Plaintiff was to obtain the relief he seeks, the Organizational Proposed Intervenors would be forced to commit resources immediately to respond to questions from members and voters about

12

the status of their lawfully cast ballots in this election.  In addition, the diversion of the organizations' resources would continue beyond the January 2021 runoff, as they would need to dedicate larger portions of their staff and monetary resources toward ensuring that members' can safely exercise their right to vote in light of new restrictions.  These efforts will come at the expense of other organizational priorities.

Finally, courts routinely find that public interest organizations, like the Organizational Proposed Intervenors, should be granted intervention in voting and other election-related cases, demonstrating the significantly protectable interests such organizations have in the electoral process.  *See, e.g.*, *Texas v. United States*, 798 F. 3d 1108, 1111 (D.C. Cir. 2015) (allowing intervention by civil rights advocacy groups); *Pub. Interest Legal Found., Inc. v. Winfrey*, No. 19-13638, 2020 WL 2781826, at *2 (E. D. Mich. May 28, 2020) (allowing voting rights organizations to intervene as defendants); *Kobach v U.S. Election Assistance Comm'n*, No. 13-cv-04095, 2013 WL 6511874 (D. Kan. Dec. 12, 2013) (allowing non-profits and nonpartisan advocacy groups to intervene); *LaRoque v. Holder*, No. 1:10-cv-00561 (D.D.C. Aug. 25, 2010), (Doc. 24) (permitting intervention by civil rights organization).  This case is no exception.

    3.    <u>Disposition of This Case May Impair Proposed Intervenors' Interests</u>

Proposed Intervenors also satisfy the third prong of the intervention analysis because "the disposition of the action, as a practical matter, may impede or impair [their] ability to protect" their interests.  *Tech. Training Assocs., Inc.*, 874 F.3d at 695-96.  Proposed Intervenors need not show that their interests "will" be impaired by disposition of the ligation; only that they "may" be.  *See Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014).  Indeed, the "very purpose of intervention is to allow interested parties to air their views so that a court may consider them before making potentially adverse decisions." *Id.* at 345; *see U.S. Army Corps of Eng'rs*, 302 F.3d at 1253

(finding it sufficient that disposition of the action "could" impair the proposed intervenors' interest).

The Individual Proposed Intervenor, the members of the Organizational Proposed Intervenors, and millions of other Georgia voters, including voters in traditionally disenfranchised communities, will face impermissible and unconstitutional burdens on their right to vote in the Senate runoff election and beyond. Millions of Georgia voters will lose access to measures that they relied upon in the November 2020 General Election, and will be forced to weigh their own health and the public health of their fellow Georgians against the fundamental right to vote.  It is thus self-evident that Proposed Intervenors' interests will be impacted by the disposition of this case.  The Individual Proposed Intervenors could have their access to the ballot restricted, while the Organizational Proposed Intervenors are at risk of losing their ability to protect their interests and those of their members in voter participation.

These concerns of voter disenfranchisement are amplified with respect to the underrepresented minority communities that the Organizational Proposed Intervenors serve. "Historically. . . throughout the country, voter registration and election practices have interfered with the ability of minority, low-income, and other traditionally disenfranchised communities to participate in democracy." *Ind. State Conf. of NAACP v. Lawson,* 326 F. Supp. 3d 646, 650 (S.D. Ind. 2018), *aff'd*, 937 F.3d 944 (7th Cir. 2019).  The Organizational Proposed Intervenors have worked to remedy those practices, in part, by ensuring that their registration, education, and get-out-the-vote efforts reach vulnerable or underserved minority communities.  Thus, the Organizational Proposed Intervenors have significant interests in ensuring that Plaintiffs' proposed relief does not harm those communities.

4. <u>The Interests of Existing Defendants May Diverge from Those of Applicants</u>

Applicants also meet the "minimal" burden of demonstrating that the existing parties in the litigation may not protect their interests. *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538 n.10 (1972); *see Clark v. Putnam Cty.*, 168 F.3d 458, 461 (11th Cir. 1999). While there is a "weak" presumption that representation is adequate when proposed intervenors seek the same objectives as existing parties, that presumption "merely imposes upon the proposed interveners the burden of coming forward with some evidence to the contrary." *Clark*, 168 F.3d at 461; *see also Tech. Training Assocs., Inc.*, 874 F.3d at 697 (citing *Clark*, 168 F.3d at 461). That threshold is easily met here; the Eleventh Circuit has recognized that defendants who are elected officials and administer elections have divergent interests from intervening voters and voting rights organizations because they represent the interests of all voting citizens and have an interest in "remain[ing] popular and effective leaders." *Clark*, 168 F.3d at 461–62 (alteration in original) (quoting *Meek v. Metro. Dade County*, 985 F.2d 1471, 1478 (11th Cir. 1993), *abrogated on other grounds by Dillard v. Chilton Cty. Comm'n*, 495 F.3d 1324 (11th Cir. 2007)). This principle squarely applies here; Defendant Raffensperger is an elected official who has responsibilities related to the administration of elections, as does the State Board.

The divergence of interests is particularly stark and demonstrable here because the Organizational Proposed Intervenors have repeatedly brought suit to challenge actions taken by these same Defendants or their predecessors in office on the basis that they denied the fundamental right to vote or otherwise harmed voters in violation of federal law. *See, e.g., Ga. Coal. for the People's Agenda v. Deal*, No. 4:16-cv-00269-WTM (S.D. Ga.) (Moore, J.) (successful suit brought against then-Secretary of State Kemp to extend voter registration deadline in the aftermath of Hurricane Matthew); *Ga. State Conf. of the NAACP v. Kemp*, No.

2:16-cv-219-WCO (N.D. Ga.) (O'Kelley, J.) (bringing suit against then-Secretary Kemp alleging that he administratively adopted an "exact match" program that illegally removed eligible voters from the rolls); *Ga. Coal. for the People's Agenda v. Raffensperger*, No. 1:18-cv-4727-ELR (N.D. Ga.) (Ross, J.) (similar suit first brought against the Georgia Secretary of State); *Martin v. Raffensperger*, No. 1:18-cv-4776-LMM (N.D. Ga.) (May, J.) (GCPA is a plaintiff in successful absentee ballot suit against the Georgia Secretary of State); *Ga. State Conf. of the NAACP v. State of Georgia*, No. 1:17-cv-1397-TCB (N.D. Ga.) (Batten, J.) (successful National Voter Registration Act lawsuit brought against the Georgia Secretary of State).

In any event, while Defendants may have a generalized interest in upholding the law, they do not have a direct interest in protecting the validity of their own votes, as the Individual Proposed Intervenor and the Organizational Proposed Intervenors' members do, nor in ensuring the broad voter access that is fundamental to the mission of the Organizational Proposed Intervenors.  Their right to vote – or more precisely, their right to have counted the votes they have already lawfully cast – is at risk.  *See Kobach v. U.S. Election Assistance Comm'n*, No. 13-cv-4095- EFMDJW, 2013 WL 6511874, at *4 (D. Kan. Dec. 12, 2013) (finding that applicants who had shown their interests in increasing participation in the democratic process and/or protecting voter rights, particularly in minority and underprivileged communities, may have private interests that diverge from the public interest of the defendant Election Assistance Commission); *see also, e.g.*, *Meek*, 985 F.2d at 1478 ("The intervenors sought to advance their own interests in achieving the greatest possible participation in the political process. Dade County, on the other hand, was required to balance a range of interests likely to diverge from those of the intervenors.").  Proposed Intervenors' interests therefore sufficiently diverge from the existing parties to satisfy Rule 24(a)(2).

16

### B.        In the Alternative, the Court Should Grant Permissive Intervention

Even if the Court determines that Applicants are not entitled to intervene as a matter of right, the Court should exercise its broad discretion to grant permissive intervention.  Permissive intervention may be proper even if a district court denies intervention as of right.  *See Purcell v. BankAtlantic Fin. Corp.*, 85 F.3d 1508, 1513 (11th Cir. 1996) (citing *Worlds v. Dep't of Health & Rehab. Servs.*, 929 F.2d 591, 595 (11th Cir. 1991) (per curiam)).  "Permissive intervention under Fed. R. Civ. Proc. 24(b) is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties."  *U.S. Army Corps of Eng'rs*, 302 F.3d at 1261 (citing *Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1365 (11th Cir. 1984)).  The decision whether to grant permissive intervention is "wholly discretionary with the court."  *Purcell*, 85 F.3d at 1508 (citing *Worlds*, 929 F.2d at 595).

Proposed Intervenors meet the requirements for permissive intervention here.  First, Proposed Intervenors seek to assert defenses that squarely address the factual and legal premises of Plaintiffs' claims, including but not limited to: (1) whether the Defendants' actions are legal under Georgia election law; (2) whether Plaintiffs' proposed relief poses an unconstitional burden on Georgia voters' fundamental right to vote; (3) the impact Plaintiffs' relief would have on Individual and Organizational Intervenors, and (4) whether any of Plaintiffs' allegations, even if proven, would require the drastic remedy they seek, and the attendant risk to public health.

Second, granting Proposed Intervenors' motion at this early stage of the case would not delay or prejudice the adjudication of the original parties' rights.  *See* Fed. R. Civ. P. 24(b).  By contrast, refusing to permit intervention would deprive Proposed Intervenors of the chance to defend their significant and protectable interests in the litigation.  Importantly, permissive

17

intervention is especially appropriate where, as here, the proposed intervenors may meaningfully contribute to the proper development of the factual or legal issues in dispute.  *See Nat'l Wildlife Fed'n v. Ruckelshaus*, 99 F.R.D. 558, 561 (D.N.J. 1983).

Proposed Intervenors expect to present perspectives on key legal and factual issues that differ from those of Defendants and the other parties in this case – namely, the perspective of individual voters whose ballots Plaintiffs seek to invalidate, and of organizations with deep experience educating, registering, and assisting voters in Georgia counties and constituent communities.  Organizational Proposed Intervenors and their affiliates in sister states, as well as their counsel, have litigated numerous voting rights cases and have substantial experience analysing claims of the kind asserted here and the methodologies that support them.  Indeed, the NAACP was recently permitted to intervene in three similar cases in Wisconsin, Pennsylvania and Michigan.  *See Donald J. Trump For President, Inc. v. Boockvar*, No. 4:20-cv-2078, Doc. 72 at 2 (M.D. Pa. Nov. 12, 2020) (holding that the NAACP and other organizations and voters "satisfy the requirements for permissive intervention under Fed. R. Civ. P. 24(b)"); *Donald J. Trump For President, Inc. v. Benson,* No. 1:20cv-1083, Doc. 20 (W.D. Mich. Nov. 17, 2020) (same), *Donald J. Trump v. The Wisconsin Elections Commission, et al.*, No. 20-cv-1785-bhl, Doc. 61 (E.D. Wisc. December 8, 2020) (same).  Copies of the orders granting these motions to intervene are attached to Exhibit 3, Declaration of Proposed Intervenors' Counsel, John Powers, as Exhibits A - C, respectively.

IV. **CONCLUSION**

For the reasons stated above, the Court should grant Proposed Intervenors' motion to intervene and to deem as filed the proposed Answer and Response to Plaintiffs' motion for injunctive relief attached to this Motion as Exhibits 4 and 5 upon the granting of this Motion.[12]

Respectfully submitted this 15th day of December, 2020.

/s/ John P. Batson
John P. Batson
Ga. Bar No. 042150
1104 Milledge Road
Augusta, GA 30904
Phone 706-737-4040
FAX 706-736-3391
jpbatson@aol.com

/s/ Ezra Rosenberg
Ezra Rosenberg*
erosenberg@lawyerscommittee.org
Kristen Clarke*
kclarke@lawyerscommittee.org
Julie M. Houk*
jhouk@lawyerscommittee.org
John Powers*
jpowers@lawyerscommittee.org
Kevin M. Benedicto*
kbenedicto@lawyerscommittee.org
*Pro hac vice applications forthcoming

LAWYERS' COMMITTEE FOR CIVIL RIGHTS UNDER LAW
1500 K Street NW, Suite 900
Washington, DC 20005
Telephone: (202) 662-8300

*Attorneys for Proposed Intervenor-Defendants*
*Georgia State Conference of the NAACP*
*Georgia Coalition for the People's Agenda, Inc.*
*Helen Butler*

---

[12] Proposed Orders regarding this Motion and Proposed Intervenors' Opposition to Plaintiffs' Motion for Injunctive Relief are attached as Exhibits 6 and 7.