# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# AUGUSTA DIVISION

| | |
|---|---|
| THE TWELFTH CONGRESSIONAL DISTRICT REPUBLICAN COMMITTEE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BRADFORD J. RAFFENSPERGER, et al, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) )  Civil No. 1:20-cv-00180-JRH-BKE |

## PLAINTIFFS' REPLY TO ALL DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

### I.   INTRODUCTION

The longstanding rule that an organization devoted to political activity has standing to assert a violation of its constitutionally guaranteed freedom of association when it is forced by a defendant's actions to divert its resources to respond to the unconstitutional actions is applicable to Plaintiffs' claims. Plaintiffs also have stated a valid equal protection claim, principally because the challenged actions arbitrarily discriminate against Plaintiffs by locating and funding drop

boxes in areas that are predominantly Democrat. They will suffer irreparable injury if the requested injunctive relief is not granted.  Defendants and Intervenors will not suffer comparable or any substantial injury if injunctive relief is granted because they have brought on themselves the need to comply belatedly with the plainly stated requirements of the statutes enacted by the Georgia General Assembly pursuant to federal constitutional authority, which laws Defendants have chosen to ignore. The public interest will clearly be served by eliminating or minimizing to the extent possible the widespread confusion cause by Defendants unauthorized and unconstitutional conduct in adopting the rules and procedures in conflict with the applicable statutes and by protecting the public's confidence in the integrity of federal elections.

      This reply will demonstrate that the arguments of Defendants and Intervenors based on laches, the Eleventh Amendment, and abstention are without merit.

### A. PLAINTIFFS HAVE STANDING

      Plaintiffs have a well-established basis for standing to challenge the actions of Defendants for violating their right to freedom of association guaranteed by the First and Fourteenth Amendments to the United States Constitution. Intervenor-

Defendants relied upon the same basis for their standing to intervene. (Mot. to Int. at 7, ECF No. 10). The basis for Plaintiffs' standing to assert their freedom of association rights is twofold. First, they are injured in a concrete and particularized manner by the adverse impact of Defendants' actions on the election prospects of Republican Party candidates, including the election prospects of Individual Plaintiffs who will be candidates for Presidential elector in 2024. *Texas Dem. Party v. Benkiser,* 459 F.3d 582, 586-87 (5th Cir. 2006); *Owen v. Mulligan,* 640 F.2d 1130, 1132 (9th Cir. 1981). Second, Plaintiffs suffer injury as a consequence of Defendants' actions that require Plaintiffs to redirect and divert their focus, energy and resources during political campaigns. *Crawford v. Marion Cnty. Elec. Bd.,* 472 F.3d 949, 957 (7th Cir. 2007), *aff'd,* 553 U.S. 181 (2008); *Northeast Ohio Coalition for Homeless v. Husted,* 837 F.3d 612, 613 (6th Cir. 2016); *New Georgia Project v. Raffensperger,* __ F.Supp.3d __, 2020 WL 5200930, at *9 (N.D.Ga. Aug. 31, 2020); *Black voters Matter Fund v. Raffensperger,* No. 1:20-cv-01489-AT, 2020 WL 4597053, at *17 (N.D.Ga. Aug. 11, 2020); *Dem. Party of Ga., Inc. v. Crittenden,* 347 F.Supp.3d 1324, 1337 (N.D.Ga. 2018); *Dem. Nat'l Comm. v. Reagan,* 329 F.Supp.3d 824, 841 (D.Ariz. 2018), *rev'd on other grounds sub nom. Dem. Nat'l Comm. v. Hobbs,* 948 F.3d 989 (9th Cir. 2020). Plaintiffs have

described such injuries regarding diversion of resources in detail in the Declarations of 12th Congressional District Republican Chairman Garland Moon (ECF 1, Exhibit D) and Plaintiff Cathy Latham (ECF 25).

     Plaintiffs also have standing to challenge Defendants' actions that violate their right to equal treatment under the law guaranteed by the Fourteenth Amendment. Individual Plaintiffs "have an interest in their ability to vote and in their vote being given the same weight as any other." *Jacobson v. Fla. Sec'y of State,* 957 F.3d 1193, 1202 (11th Cir. 2020). Georgia officials may not establish by the effect of their rules and orders categories or classifications of voters that discriminate against other categories or classes of voters. *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). In the circumstances of this case, Defendants Raffensperger and members of the State Election Board ("SEB") have treated Republicans and Libertarians who vote in person differently from Democrats who overwhelmingly vote absentee. These Defendants also treat Republicans and Libertarians who seek to monitor vote counting and signature verification differently from Democrats who are given access to those procedures. In both situations, Defendants have discriminated against a class in which the Individual Plaintiffs participate without justification. The challenged rule allowing the use of drop boxes discriminates

against the 12th District Committee and its members, as well as Plaintiff Metz because the use of drop boxes, which Plaintiffs oppose and do not intend to use, have been located often with state funding support in areas having heavy majorities of Democrat voters.

Defendants and Intervenor-Defendants contend that Plaintiffs lack standing to assert claims under the Electors Clause (Art. II, § 1, cl. 2) and the Elections Clause (Art. I, § 4, cl. 1). But candidates for Presidential elector have standing under the Electors Clause to challenge actions that injure them in concrete and particularized ways. *See Carson v. Simon,* 978 F.3d 1051, 1057 (8th Cir. 2020); *Wood v. Raffensperger,* No. 20-14418, 2020 WL 7094866 (11th Cir. Dec. 5, 2020); *Trump v. Wisconsin Elections Comm'n*, E.D. Wis. No. 20-CV-1785-BHL, 2020 WL 7230960 (E.D. Wis. Dec. 8, 2020) *see also Carney v. Adams,* __ S.Ct. __, 2020 WL 7250101 (Dec. 10, 2020). The 12th District Committee also has standing under the Electors and Elections Clauses to challenge Defendants' action that have a substantial adverse impact of its ability to elect its candidates to federal office. *See id.*

Plaintiffs' injuries are plainly traceable to Defendants' actions, which were undertaken pursuant to the Georgia Election Code. Those injuries are redressable

by the relief they seek in the form of invalidation of those actions and injunctive relief.

In the short period in which to respond to the brief of Intervenor NAACP of Georgia (ECF No. 40), it is enough to note that its argument utterly ignores the claims actually asserted by Plaintiffs, who point specifically to the violations of the right to freedom of association and to the equal protection of the law with respect to the illegal authorization and funding of drop boxes and the unauthorized weakening and inconsistent implementation of the verification requirements enacted by the General Assembly pursuant to federal authority. See Ex. A.

### B. THE ELEVENTH AMENDMENT DOES NOT APPLY TO OFFICIALS

Richmond Defendants and Intervenor-Defendants argue that Plaintiffs' claims are barred by the Eleventh Amendment. (Richmond Defs' Br. at 4-5, ECF No. 28-1; Int. Br. at 10, ECF No. 30). Their argument is that Plaintiffs assert only that Defendants failed to comply with Georgia law and that such assertions are prohibited under the holding in *Pennhurst St. Sch & Hosp. v. Halderman,* 465 U.S. 89, 106 (1984). Plaintiffs have sued only individual officials and not any state or local governmental entities. Plaintiffs' claims are based on the due process and equal protection provisions of the U.S. Constitution as well as on the fact that the

Georgia statutes at issue were enacted pursuant to federal constitutional authority, not merely on state authority.

The Eleventh Amendment provides: "The judicial power of the United States shall be construed not to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." It has long been established by Supreme Court decisions that suits against state agents, rather than against the state itself, based upon those agents' violations of federal law, can be maintained in federal court notwithstanding the Eleventh Amendment's language. *E.g., Ex parte Young,* 209 U.S. 123, 159-60 (1908); *MCI Telecomm. Corp. v. Ill. Bell Tel. Co.,* 222 F.3d 323, 336 (7th Cir. 2000).

"[P]laintiffs may sue state officials in their official capacities when they seek 'prospective equitable relief to end *continuing* violations of federal law.'" *Curling v. Sec'y of Georgia,* 761 Fed. Appx. 927, 931 (11th Cir. 2019) (quoting *Summit Med. Assocs. P.C. v. Pryor,* 180 F.3d 1326, 1336 (11th Cir. 1999) (emphasis in original); *Fair Fight Action, Inc. v. Raffensperger,* 413 F.3d 1251, 1280 (N.D Ga. 2019) ("[T]he remedy of prospective injunctive relief is 'not the functional equivalent' of a form of relief barred by the Eleventh Amendment.").

Intervenor-Defendants and Richmond Defendants assume that Counts I, II, III and IV assert claims only under the due process and equal protection clauses of the U.S. Constitution. (Int. Br. at 11, ECF No. 30; Richmond Br.in Support of Mot. to Dismiss at 3-5, ECF No. 28-1). This ignores that the Georgia statutes at issue were enacted pursuant to the authority conferred by Article I, § 4, cl. 1 and Article II, § 1, cl. 2 of the U.S. Constitution. Although Count V may assert purely state law claims, the other counts clearly assert federal claims in all respects. This distinguishes this case from the cases on which Intervenor-Defendants and Richmond Defendants rely, which cases involve claims based on laws enacted pursuant to a state's authority exclusively under its constitution.

Plaintiffs do not seek to invalidate state laws but rather to prohibit Defendants from implementing administrative measures that violate state statutes enacted pursuant to federal authority. The challenged administrative rules and directives are subject to the prohibitions of Article I, § 4, cl.1 and Article II, § 1, cl. 2, which preclude requirements in conflict with the statutes enacted by the legislative body in the state pursuant to federal authority.

*Pennhurst* held that a federal court cannot enjoin a state officer from violating state law. But the *Pennhurst* exception does not apply where a plaintiff's

claim is predicated on federal law, as in this case. *Dean Foods Co. v. Brancel,* 187 F.3d 609, 613 (7th Cir. 199); *Trump v. Wis. Election Comm'n,* 2020 WL 7230960 *14; *Donald J. Trump for President, Inc. v. Boockvar,* No. 2:20-CV-966, 2020 WL 5997680, at *75 (W.D. Pa. Oct. 10, 2020). Although the complaint in this action cites provisions of Georgia law, it does so to show that Defendants violated not merely those state statutes, but the First and Fourteenth Amendments to the U.S. Constitution as well. *See Bush v. Palm Beach Cnty. Canvassing Bd.,* 531 U.S. 70, 76 (2000). Plaintiffs has asserted a federal cause of action. Because their claims are premised on a federal constitutional violation, not merely a violation of Georgia law, the *Pennhurst* exception to the rule in *Ex parte Young* does not apply. *Trump v. Wis. Election Comm'n,* 2020 WL 7230960 at *15.

### C. ABSTENTION IS NOT APPROPRIATE HERE.

The State Defendants argue that the Court should abstain from adjudicating Plaintiffs' claims under *Purcell v. Gonzalez,* 549 U.S. 1 (2006), *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496 (1941) and *Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800 (1976).  (St. Defs' Br. at 12--15, ECF No. 26).

The caution announced in *Purcell* that federal courts should ordinarily decline to change the rules of an election on the eve of the election does not apply

in these circumstances. The concern in *Purcell* that a federal court's decision would cause confusion is not a legitimate concern in this case because the relief sought by Plaintiffs would eliminate the considerable confusion that currently exists because of Defendants' actions that are directly in conflict with Georgia election statutes. Plaintiffs and county election officials are confronted with that obvious conflict between the unambiguous language of the statutes and the language in the rules and procedures that Defendants have instructed them to follow. It is imperative to eliminate the confusion in advance of the election so that Plaintiffs, county election officials, voters and the Defendants and Intervenor-Defendants will have clear guidance regarding the procedures and standards that apply in the runoff elections.

The *Pullman* abstention rule "applies when the 'resolution of a federal constitutional question might be obviated if the state courts were to be given the opportunity to interpret ambiguous state law.'" *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 716-17 (1996). The *Pullman* rule would apply here if there is (1) a substantial uncertainty as to the meaning of the state law and (2) a reasonable probability that the state court's clarification of state law might obviate the need for a federal constitutional ruling. *Trump v. Wis. Election Comm'n,* 2020 WL 7230960 at *17. The language in O.C.G.A. §§ 21-2-382, 21-2-385 and 21-2-386 is

plain and unambiguous. The conflict between those statutes and the two rules adopted by Defendant SEB and the procedure that Defendant Raffensperger has issued is also obvious.

The *Colorado River* principle that a federal court should defer to a parallel state court that is currently considering a similar action does not apply to this case. That principle requires that the state court action is actually parallel to the federal court action and that exceptional circumstances exist to support a stay or dismissal of the federal action. State Defendants point to neither of those conditions. It is enough to reject Defendants' reliance on the *Colorado River* principle to demonstrate that the state court action does not address the federal constitutional issues that are presented in Plaintiffs' action.

### D. THIS ACTION SHOULD NOT BE DISMISSED BECAUSE OF LACHES

The opposing parties have the burden of demonstrating that Plaintiffs have inexcusably delayed in challenging the rules and procedures adopted by Defendants SEB and Raffensperger and that the opposing parties have been prejudiced as a result. *Dem. Exec. Comm. of Fla. v. Lee,* 915 F.3d 1312, 1326 (11th Cir. 2019). They have failed to meet that burden.

The fact that there would be two runoff elections was not known until after the November 3, 2020 general election results were announced. SEB Rules 183-1-14-0.6-.14 and 183-1-14-0.9-.15 in their present form were adopted on November 23, 2020. Most important for this issue of laches is that Plaintiffs were not aware of the full impact of the opportunity for county election officials to open absentee ballot envelopes, of the use of drop boxes, and the application of Secretary Raffensperger's verification procedure until they witnessed what occurred under the extraordinary volume of absentee ballots processed during the 2020 general election cycle. *See* Declaration of Cathy Latham (ECF 25). Upon realizing the adverse effect of those rules and procedures, they promptly consulted counsel and commenced this action on December 9, 2020.

None of the opposing parties will suffer any substantial prejudice if relief is granted to Plaintiffs because the opposing will merely be required to comply with the statutes that they have a legal obligation to follow. The fact that Defendants have chosen not to follow those statutes is what has produced the confusion that exists. Intervenor-Defendants were also charged with knowledge of the applicable statutes and the federal constitutional requirement that the rules enacted by the Georgia General Assembly govern federal elections. There will be minimal

disruption if the illegal drop boxes are not allowed to be used, if the absentee ballot envelopes and their contents are not separated, and if the verification procedure established by O.C.G.A. § 21-2-386(a)(1)(B) is implemented rather than the procedure that Defendant Raffensperger has instructed county election officials to follow.

### E. Plaintiffs Are Entitled to Injunctive Relief

As set forth in Plaintiffs' Memorandum in Support of Plaintiffs' Motion for Preliminary Injunction (ECF No. 2), the applicable factors for granting or denying such a motion favor a grant of injunctive relief to Plaintiffs. The arguments of opposing parties to the contrary are not persuasive.

The likelihood of success on the merits of Plaintiffs' claims has been clearly demonstrated. They have shown that the challenged rules and procedures violate the fundamental constitutional proposition that adoption of those measures by Defendants Raffensperger and SEB members was without legal authority. Only the Georgia General Assembly can establish the rules for a federal election. The Defendants' actions are in direct conflict with applicable provisions of the Georgia Election Code, which provisions of the U.S. Constitution prohibit. The adoption of the challenged measures impinges upon Plaintiffs' freedom of association rights

guaranteed by the due process and equal protection because they force Plaintiffs to divert their focus, energy and resources to activities at the expense of other activities that they would undertake to support their candidates. Those measures also violate Plaintiffs' right to the equal protection of the laws guaranteed by the Fourteenth Amendment, particularly because the drop box rule provides for a collection method that facilitates the ballot harvesting activity that the Georgia General Assembly intended to minimize by excluding the drop box option from those methods authorized by O.C.G.A. §§ 21-2-382 and 21-2-385 and weakening the careful verification protocol prescribed in O.C.G.A. § 21-2-386(a)(1)(B).

Plaintiffs will suffer irreparable injury to their associational rights if the requested relief is not granted. During the critical period leading up to the runoff elections, they will be forced to divert much of their time, focus, energy and resources to combatting the ballot harvesting that is facilitated by the challenged rules and procedures that are in conflict with the statutes enacted by the General Assembly pursuant to federal authority. Such injury to First Amendment rights are by their very nature irreparable.

The harm to the Defendants and Intervenors is that they will be required to conform their actions to the requirements mandated as a matter of federal law even

though enacted by the Georgia General Assembly. These requirements have been ignored by Defendants and Intervenors at their considerable risk. They should not be allowed to rely on their disregard for those clearly applicable requirements to demonstrate harm to themselves if the Court grants the relief requested by Plaintiffs.

The public interest will be served by eliminating or, at a minimum, substantially reducing the widespread confusion that the unlawful actions of Defendants Raffensperger and the SEB members have generated by adopting rules and procedures that are in direct conflict with the statutes enacted by the General Assembly pursuant to federal authority that govern the conduct of federal elections. Granting the requested relief will also serve to "protect public confidence in elections." *Dem. Exec. Comm. of Fla. V. Lee,* 915 F.3d 1312, 1327 (11th Cir. 2019) quoting *Crawford v. Marion Cnty. Elec. Bd.,* 553 U.S. 181, 197 (2008) (plurality opinion).

## II.   CONCLUSION

The Court should grant Plaintiffs' request for preliminary injunctive relief.

Respectfully submitted,

**12th CONGRESSIONAL DISTRICT REPUBLICAN COMMITTEE, et al.**

/s/  Christopher I. Kachouroff
Christopher I. Kachouroff, Esq.*
Patrick M. McSweeney, Esq.*
Robert J. Cynkar, Esq.*
MCSWEENEY, CYNKAR & KACHOUROFF, PLLC
13649 Office Place, Suite 101
Woodbridge, Virginia 22192
(703) 621-3300 (o)
chris@mck-lawyers.com
patrick@mck-lawyers.com
rcynkar@mck-lawyers.com

Johnny Vines, Esq.
Georgia Bar Number: 940633
JOHNNY VINES, P.C.
404 Durden Street, Suite B
Vidalia, Georgia 30474
(912) 388-7071 (o)
(912) 537-6600 (f)
jecvines@vineslaw.com

*Counsel for Plaintiffs*

* Admitted Pro Hac Vice

## CERTIFICATE OF SERVICE

I hereby certify that on December 16, 2020, I electronically filed this document with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record:

/s/  Christopher I. Kachouroff
Christopher I. Kachouroff, Esq.*
Patrick M. McSweeney, Esq.*
Robert J. Cynkar, Esq.*
MCSWEENEY, CYNKAR & KACHOUROFF, PLLC
13649 Office Place, Suite 101
Woodbridge, Virginia 22192
(703) 621-3300 (o)
chris@mck-lawyers.com

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# AUGUSTA DIVISION

| | |
|---|---|
| THE TWELFTH CONGRESSIONAL DISTRICT REPUBLICAN COMMITTEE, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BRADFORD J. RAFFENSPERGER, et al, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) Civil No. 1:20-cv-00180-JRH-BKE |

### DECLARATION OF DEBRA S. GIDDENS

I, Debra S. Giddens, declare the following pursuant to 28 U.S.C. § 1746 based on my information, knowledge, and belief.

1. I am a registered voter in the State of Georgia and an a resident of Ware County. I intend to vote in person in the runoff election on January 5, 2021.

2. I serve as the Secretary of the Ware County Republican Party. I am a State Committee Member of the Georgia Republican Party and I am also the First Congressional District Republican Party Assistant Secretary. I was a Poll Watcher

**Declaration of Debra S. Giddens**

Page 1 of 3



for Advance Voting for the November 3 General Election, and I was also a Poll Watcher-at-Large on Election Day November 3.

3. Both before and after the General Election, a number of Republicans in Ware County had concerns of whether or not ALL the signatures on the Absentee Ballots for the November 3 General Election were being checked and/or verified. I had a number of conversations and phone calls from these concerned Ware County citizens. I personally talked to the Supervisor of Elections on two occasions regarding the signatures being checked. I never received a direct yes or no answer.

4. On Wednesday, December 2, 2020, I had a meeting with Carlos Nelson, Ware County Supervisor of Elections, in his office at the Ware County Board of Elections. I said to him that I wanted to know whether or not ALL of the signatures on the absentee ballots for the November 3 election were checked and verified. Mr. Nelson stated to me that MOST all of the signatures were checked. He stated: "Sometimes we had a lot of absentee ballots delivered all at once, and we had a lot of Advance voters in line to vote, and we got behind with getting the ballots checked."

All of the statements above are made to the best of my knowledge, information, and belief under penalty of perjury.

Dated: December 12, 2020

_Debra S. Giddens_
Debra S. Giddens